UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **FELIX JONES-HILL**, | **2:23-CV-10928-TGB-KGA** |
| Petitioner, | HON. TERRENCE G. BERG |
| v. | |
| **CATHERINE S. BAUMAN**, | **OPINION DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| Respondent. | |

Felix Jones-Hill filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Jones-Hill is serving a mandatory life sentence and lesser terms for his Wayne Circuit Court jury trial conviction of one count of first-degree murder, MCL § 750.317, three counts of assault with intent to commit murder, MCL § 750.83, and related firearms offenses, MCL §§ 750.224f, 750.227b. This petition raises four claims challenging Jones-Hill's state convictions.

For the following reasons, Jones-Hill's request for habeas relief is **DENIED**.

## I. LEGAL STANDARD

A § 2254 habeas petition is governed by the heightened standard of review outlined in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who raise claims adjudicated by state courts must "show that the relevant

1

state-court decision (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

"AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted). Ultimately, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Additionally, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## II. BACKGROUND

Jones-Hill and Turon Reaves were charged and tried jointly in connection with the shooting death of Taef Al-Saoor. During the early morning hours of October 14, 2018, Al-Saoor and three other individuals

2

were driving on Eight Mile Road in Detroit, Michigan, when they were shot at by a passing vehicle. A bullet struck Al-Saoor in the head and killed him.

Investigators swiftly focused their investigation on Jones-Hill and Reaves. Shortly before the shooting, the two men were seen turning onto Eight Mile from the parking lot of a nightclub armed with an assault rifle, apparently looking to settle a score with a man driving a car similar in appearance to Al-Saoor's. Parts of the incident were caught on surveillance video obtained from various businesses along that stretch of Eight Mile, enabling police to get the license plate number of the suspect vehicle.

Samuel Bryant testified at trial that he was a security guard at the Ace of Spades Gentleman's Club on Eight Mile. ECF No. 7-10, PageID.563–64. Bryant was working the night of October 13-14, 2018. *Id.* Bryant knew Jones-Hill and recognized him as one of the people involved in an altercation earlier that night in the parking lot. *Id.* at PageID.566. Bryant identified the other man as someone he knew as "O," who he described as "a little hot head" who "was always starting something." *Id.* at 567. When Bryant saw Jones-Hill exit the club simultaneously with O, he suspected O might try to start something with Jones-Hill. *Id.* at PageID.568–69.

Bryant saw O walk to his "wet-gray" Dodge Charger, reach inside, and arm himself with a handgun. *Id.* at PageID.570, 572–73. Bryant

3

turned around when he heard a gun racking behind him, and he saw that
Jones-Hill had armed himself with an assault rifle he retrieved from a
white Ford Fusion. *Id.* at PageID.570–71.

Bryant stood between the men to defuse the situation. *Id.* at
PageID.571–72. Meanwhile, O got into his Charger and exited the lot
while "spitting racial slurs" at Jones-Hill. *Id.* at PageID.572–73. Jones-
Hill told Bryant he was going back inside to get his friend. *Id.* at
PageID.571–73. Jones-Hill handed the rifle to Bryant, who put it in the
backseat of the Fusion. *Id.* at PageID.574.

Less than five minutes later, Jones-Hill came out of the club with
Reaves. *Id.* at PageID.575. Jones-Hill asked Bryant if he knew where O
was, and Bryant replied that he was gone. *Id.* at PageID.576. Jones-Hill
climbed into the back of the Fusion where Bryant had put the rifle, and
Reaves got into the driver's seat. *Id.* at PageID.576. They turned
eastbound on Eight Mile, the same direction O had left. *Id.* at
PageID.579.

At trial, the prosecution played surveillance video obtained from
the Ace of Spades club. *Id.* at PageID.600. According to Bryant, the
footage showed the interaction between Jones-Hill and O in the parking
lot. *Id.* at PageID.601. It showed O leaving the lot in his car at 1:48 a.m.
*Id.* at PageID.604. It showed Jones-Hill and Reaves entering the Fusion
and exiting the lot at 1:52 a.m. *Id.* at PageID.606–07.

4

Toma Al-Saoor testified that on October 14, 2018, sometime between 1:40 a.m. and 1:55 a.m., he was driving his vehicle, a shiny brand-new gray Dodge Charger, on Eight Mile. *Id.* at PageID.659–62, 685. His brother, Taef Al-Soor, was in the rear passenger seat. His friend, Rami, and Taef's girlfriend, Mireya, were also in the car. *Id.* at PageID.661. They had just left Trumpps Nightclub on Eight Mile and were headed to the casino. *Id.* at PageID.678-79. As they drove, they passed the Ace of Spades. *Id.* at PageID.668.

Toma noticed a white Ford Fusion driving very slowly on Eight Mile in front of him. *Id.* at PageID.661–62. After he passed the Fusion, Toma heard gunshots, and Rami yelled, "They're shooting bullets!" *Id.* at PageID.663. Toma was shot in the armpit. *Id.* at PageID.664–65. He looked to his left and saw that the Fusion had pulled alongside the driver's side of his car and was firing. *Id.* at 664. Toma brought the vehicle to a halt, at which point the Fusion stopped in front of him, continuing the bombardment from the passenger side. *Id.* at PageID.665, 677, 669.

Toma then drove to a nearby liquor store and asked for help. *Id.* at PageID.668. Toma saw that his brother had been shot in the head and was unconscious. Mireya had been shot in the nose. *Id.* at PageID.664–65. Police and emergency responders arrived, and Toma was taken to the hospital. *Id.* at PageID.665.

5

On cross-examination, Jones-Hill's counsel repeatedly asked Toma about the relative position of the two vehicles before and after the shooting. The trial court eventually directed counsel to move to another topic. *Id.* at PageID.688–93. This ruling forms the basis for Jones-Hill's first habeas claim.

The other two survivors of the shooting gave similar accounts. Rami Hadaya testified they were driving on Eight Mile, heading for a downtown casino. Somewhere between the Southfield and Lodge Freeways, a car on their left started shooting at them. After the shooting, Toma drove to a nearby liquor store, where he saw that the three other people in the vehicle had been shot. *Id.* at PageID.696–701.

Mireya Jurado testified that the four drove down Eight Mile after leaving a club. She did not know where on Eight Mile the shooting occurred or where the shots were coming from. She was shot in the left cheek and on the side of the nose. *Id.* at PageID.707–12.

Assistant Wayne County Medical Examiner Lokman Sung testified that he performed the autopsy on Taef Al-Saoor. ECF No. 7-11, PageID.724–25. Al-Saoor had been shot on the left side of the head. *Id.* at PageID.727. The entrance wounds suggested the bullet first passed through another medium, like glass. The extent of the destruction made it likely that the bullet was shot at high velocity. *Id.* at PageID.727–30. A deformed bullet jacket and core fragment were recovered from Al-Saoor's head. *Id.* at PageID.731. A single autopsy photo depicting the

fatal injury was admitted over objection. *Id.* at PageID.732–33. Admission of the photo forms the basis of Jones-Hill's third habeas claim.

Detroit Police Officer Michael Roby testified that he and his partner were called to the liquor store. When Officer Roby arrived, he discovered that three of four individuals in a Dodge Charger had been shot, and one of them had a gunshot wound to the head. Officer Roby called for EMS, and all three injured occupants were taken to the hospital. *Id.* at PageID.737–40. Other officers walked up and down Eight Mile trying to find the scene of the shooting, but they were unsuccessful. *Id.* at PageID.744–52.

Michelle Douglas, an evidence technician, processed the Dodge Charger at the garage. She observed several bullet impacts on the front and driver's side, as well as blood throughout the interior. *Id.* at PageID.757–63.

Relevant to Jones-Hill's fourth habeas claim, the prosecutor sought admission of a report authored by MSP Forensic Scientist Brain Grabowski. ECF No. 7-11, PageID.782. Before admitting the report, the trial court inquired whether the prosecution had complied with the notice provisions of Michigan Court Rule 6.202. The prosecution indicated that an e-mail and e-filing of the report had been sent to defense counsel on November 4, 2019, indicating their intention to admit the report. *Id.* at PageID.782–83.

When the court asked defense counsel whether they agreed that the prosecution had complied with the rule, Jones-Hill's counsel responded cryptically, "Yes, no, yes, no." *Id.* at PageID.783. The court found that the prosecutor complied with the rule. *Id.* at PageID.783–84. The court gave defense counsel a second opportunity before admission to object, but counsel declined the offer to place anything else on the record. *Id.* at PageID.788.

The report was thereafter admitted. It indicated that Grabowski examined one portion of a fired metal jacket, one portion of a lead core, and another fired metal jacket. He could not determine whether the fragments were fired from the same firearm. One fragment displayed conventional rifling, but it could not be further classified. One fragment was consistent with being fired from either a .22 caliber or 5.56 mm weapon with rifling. *Id.* at PageID.789–90.

Detroit Police Sergeant Lance Sullivan testified that he obtained surveillance video footage from the liquor store, the Ace of Spades, and a car dealership located at the scene of the shooting. Videos and still frames were admitted as trial exhibits. ECF No. 7-11, PageID.792–815.

Detective Sergeant James Plummer, an MSP evidence technician, testified that he was among the group of officers who discovered the shooting scene at Southfield Quality Cars on Eight Mile. Four vehicles inside a fenced-in lot and the fence had been struck with bullets. The bullets penetrated too deeply to be recovered. This indicated to Plummer

8

that the bullets had been fired at a high velocity consistent with a 5.56mm rifle; there was too much damage for the rounds to have been fired from a .22 caliber weapon. ECF No. 7-12, PageID.892–902.

Plummer also obtained and reviewed surveillance video from several businesses east of the Ace of Spades on Eight Mile, including the car dealership. On the tapes, he spotted a white Ford Fusion driving east on Eight Mile twenty-seven seconds before noting the victims' vehicle pass. Plummer could see that the Fusion bore a license plate later determined to belong to Reaves' mother. *Id.* at PageID.915–18.

Further evidence—aside from the direct testimony provided by the Ace of Spades security guard—linked the Ford Fusion seen in the video to co-defendant Reaves and then linked Reaves to Jones-Hill. ECF No. 7-12, PageID.963–70. The license plate was registered to Reaves' mother and hidden under her nightstand. Reaves' mother testified that Reaves told her that he had scrapped the car. ECF No. 7-11, PageID.862–69; ECF No. 7-12, PageID.953–57. Rifle ammunition compatible with the bullets used in the shooting was found in her basement. ECF No. 7-12, PageID.973–74. A security guard from an apartment complex where Reaves stayed with his girlfriend recorded the Fusion entering the complex the night before the shooting and then again in the early morning hours after the shooting. ECF No. 7-11, PageID.841–46. Clothing matching what Reaves was wearing the night of the incident was found in the apartment, and clothing matching what Jones-Hill was

wearing was found in another bedroom, along with papers bearing his name. ECF No. 7-12, PageID.918–19, 943–47, 974–81.

During closing arguments, the prosecution played a video montage for the jury, asserting it showed Reaves and Jones-Hill pull out of the Ace of Spades lot in the Fusion, accelerate past the victims' vehicle somewhere in front of the car dealership, ultimately blocking the path ahead, and forcing the victims' car to stop and reverse. ECF No. 7-12, PageID.1026–29.

Upon providing jury instructions, the trial court prefaced the 'aiding and abetting' instruction by stating that the evidence had one occupant of the Fusion driving while the other occupant fired. ECF No. 7-13, PageID.1091. Defense counsel objected. This exchange forms the basis of Jones-Hill's second habeas claim.

The jury found both defendants guilty on all counts.

Following sentencing, Jones-Hill filed a claim of appeal in the Michigan Court of Appeals. His first appellate counsel filed a brief raising one issue; substitute counsel filed a supplemental brief raising four additional claims:

> I. The theory of the defense at trial was that the police had misidentified the Fusion that they were in that night as the vehicle the person who shot the victims was riding in. The trial judge limited questioning about the circumstances of the shooting, and then mischaracterized the evidence in the aiding and abetting instruction it gave to the jury, violating Mr. Jones-Hill's due process right to a fair trial.

10

II. Appellant Felix Jones-Hill was denied a fair trial and due process when the prosecution was allowed to introduce the gruesome, inflammatory autopsy photo of the head of the deceased who died as a result of gunshot wound to the head.

III. The trial court prejudiced appellant when it interrupted defense counsel's cross-examination without justification and impermissibly denigrated counsel.

IV. There is plain error where a police officer not qualified as an expert is allowed to give expert opinion.

V. Appellant's objection to the admission of a laboratory report pursuant to MCR 6.202 should have been sustained. Subsequent admission violated his right of confrontation, and this error is not harmless.

The Michigan Court of Appeals affirmed in an unpublished opinion. *People v. Jones-Hill*, No. 352354, 2021 WL 4239024, at *1–2 (Mich. Ct. App. Sept. 16, 2021). Jones-Hill, raising the same claims, applied for leave to appeal in the Michigan Supreme Court—which the supreme court denied. *People v. Jones-Hill*, 977 N.W.2d 533 (Mich. 2022) (Table).

Now, Jones-Hill's habeas petition raises four of the five claims presented on direct appeal, omitting the claim concerning the police officer's qualification to give expert testimony.

## III. DISCUSSION

### A. Cross-Examination of Toma Al-Saoor

Jones-Hill first claims that the trial court exhibited bias, denigrated defense counsel, and prevented him from presenting a

11

complete defense when it cut short defense counsel's cross-examination of Toma Al-Saoor regarding the position of the two vehicles before and during the shooting.

After reciting the relevant standard and quoting the challenged exchange in the transcript, the Michigan Court of Appeals rejected the claim:

> Although Jones-Hill argues that there was no justification for the trial court to interrupt defense counsel's cross-examination of the witness, the court had already allowed defense counsel an opportunity to question Toma about the positioning of the Fusion before and during the shooting, and it intervened only when it believed that counsel's questioning had become excessive—on a subject it believed was only marginally relevant to the asserted defense theory—and the witness had already admitted being unable to recall many of the details.
>
> ***
>
> We do not believe that the trial court's interruption of defense counsel's cross-examination either prevented Jones-Hill from presenting his defense or pierced the veil of judicial impartiality. The court intervened only after repeated questioning regarding the positioning of the Fusion leading up to the shooting and where the witness had already admitted that he did not know exactly where the Fusion came from before the shooting started, a subject the court also believed had only limited relevance given the defense that Jones-Hill was not involved in the shooting. The trial court had discretion to exercise reasonable control over the interrogation to avoid harassment or needless consumption of time. The court gave counsel an opportunity to explain why continued questioning regarding the positioning of the Fusion was necessary and she did not do so.

Further, the court's comments to defense counsel, while seemingly hostile, did not pierce the veil of judicial impartiality. Admittedly, the court's remarks reflected its impatience with counsel's repeated questioning on a subject that had already been covered and had apparent limited relevance, but the court's remarks were directed at its efforts to understand the relevancy of the questioning and did not involve personal attacks on defense counsel. Moreover, because this exchange was isolated and the court's remarks were limited to inquiring about the relevancy of the repeated line of questioning, it was not reasonably likely to create an appearance of partiality against Jones-Hill. *Stevens*, 498 Mich at 171. Accordingly, Jones-Hill is not entitled to a new trial with respect to this issue.

*Jones-Hill*, 2021 WL 4239024, at *18–20.

"[T]he Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (internal quotation marks and citation omitted). An impartial judge is a necessary component of a fair trial. *In re Murchison*, 349 U.S. 133, 136 (1955). The Supreme Court established the standard for assessing claims of judicial bias in *Liteky v. United States*. 510 U.S. 540 (1994). A judge's remarks that are "critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555.

The Michigan Court of Appeals did not unreasonably apply this standard. A fair reading of the record shows that Al-Saoor testified repeatedly and clearly that when he first passed the Fusion, it was on his

13

right; and when the Fusion passed him, it did so on his left. Despite his consistent account regarding the positioning of the two vehicles, defense counsel returned to the subject multiple times, prompting the court's intervention.

On direct examination, Al-Saoor testified that he first saw the Fusion driving very slowly in front of him. ECF No. 78-10, PageID.662. He was shown surveillance video footage and photos and indicated where they showed his car traveling down Eight Mile. *Id.* at PageID.669–76. After Al-Saoor passed the Fusion, it came up to his left side as shots were fired at his vehicle—shots coming out of the Fusion's passenger side. *Id.* at PageID.633, 677. Al-Saoor then stopped his vehicle and started to reverse. *Id.* at 668. He indicated where one of the videos showed his car backing up on Eight Mile while it was being fired upon. *Id.* at PageID.676–77.

On cross-examination, Al-Saoor testified repeatedly that when he first came up on the Fusion, he passed it on its driver's side so his passenger's side was closest to the car. *Id.* at PageID.688–89. Defense counsel asked Al-Saoor if that was when the shooting occurred; he answered that it was not. *Id.* at PageID.689. Al-Saoor explained that the shooting occurred "after I passed it, he came from the driver's side and started." *Id.* Defense counsel proceeded to ask Al-Saoor about the relative position of the vehicles when he first passed the Fusion no less than *seven* times. *Id.* at PageID.688–89.

14

Al-Saoor testified that after he passed the Fusion, it then came up to his driver's side and started shooting. *Id.* at PageID.690. Counsel then asked Al-Saoor no less than *five* more times about whether and how the Fusion came up on his driver's side after he passed it. *Id.* at PageID.690–91. At that point, the trial court directed defense counsel to move on to a different topic, finally stating, "I don't think there is anything more you can do with him on this." *Id.* at PageID.691–93.

At no point in his testimony did Al-Saoor equivocate about which side he passed the Fusion, and on which side the Fusion passed him. In any event, much of the episode was caught on video, and the location of the bullet holes in Al-Saoor's car indicated the direction of the shots.

"[J]udicial rulings alone almost never constitute a valid basis" for a claim of bias or partiality. *Liteky*, 510 U.S. at 555. Here, the trial court directing defense counsel to move on did not evidence bias or partiality. Trial courts have "wide latitude" to exclude questioning that is repetitive, marginally relevant, or poses a risk of harassment. *Crane v. Kentucky*, 476 U.S. 683, 689 (1986); *United States v. Hynes*, 467 F.3d 951, 960 (6th Cir. 2006). The trial court reasonably exercised its discretion by directing defense counsel to move on from the repetitive line of questioning.

The Court has little trouble concluding that the Michigan Court of Appeals reasonably found the state trial court's ruling did not indicate bias or partiality nor deny Jones-Hill an opportunity to present a defense regarding the position of the vehicles.

15

Portions of Jones-Hill's habeas brief also assert that the trial court's conduct prevented defense counsel from subjecting the prosecution's case to meaningful adversarial testing, resulting in an alleged violation of the Sixth Amendment under *United States v. Chronic*. 466 U.S. 648, 659 (1984).

Despite some references to the right to counsel in Jones-Hill's state court brief, the Court finds this argument was not developed to the requisite extent: it was not fairly presented or exhausted on the state's direct review. *See* ECF No. 7-15, PageID.1272–77. Therefore, it cannot form the basis for granting habeas relief. 28 U.S.C. § 2254(b).

At any rate, the claim is without merit. *See* § 2254(b)(2). A constructive denial of counsel under *Cronic* occurs when "(1) the defendant "is denied the presence of counsel at 'a critical stage' and suffers 'the complete denial of counsel,' or (2) when 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.'" *See Bell v. Cone*, 535 U.S. 685, 695–96 (2002). Defense counsel was present during the prosecution's cross-examination of Al-Saoor and performed meaningful adversarial testing. The trial court's ruling directing defense counsel to move to another topic after repetitive questioning about the position of the vehicles did not result in a constructive denial of counsel.

Jones-Hill's first habeas claim is without merit.

**B. Comment Preceding Aiding & Abetting Instruction**

Jones-Hill's second claim asserts that the jury instructions impermissibly directed the jury to find that the passenger of the Focus shot at the victims while another man drove it. The Michigan Court of Appeals rejected the claim, finding that "viewing the instructions as a whole and in context...[the challenged comments were] merely an explanation for why the court was providing an instruction on aiding or abetting." *Jones-Hill,* 2021 WL 4239024, at *3.

For habeas corpus relief to be warranted based on incorrect jury instructions, a petitioner must show more than that the instructions were undesirable, erroneous, or universally condemned. Instead, taken as a whole, the instructions must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). Stated differently, a jury instruction is not judged in artificial isolation; it must be considered in the context of the instructions' entirety and the trial record. *Jones v. United States*, 527 U.S. 373, 391 (1999); *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996).

Where an instruction is ambiguous—though not necessarily erroneous—it can only run afoul of the Constitution provided there is a reasonable likelihood the jury applied the challenged instruction in a way that violates it. *See Estelle*, 502 U.S. at 72–73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). A habeas petitioner must show that the

17

challenged instruction had a substantial and injurious effect or influence on the jury's verdict. *Hedgpeth v. Pulido*, 555 U.S. 57, 61–62 (2008).

Jones-Hill takes issue with a statement made by the trial court in a prelude to instructing the jury on the elements of aiding and abetting. "I also need to explain to you another concept known as aiding and abetting because *the evidence, as you've heard it, had one occupant of the Fusion doing the shooting and the other apparently doing the driving.*" ECF No. 7-13, PageID.1091 (emphasis added). The court then instructed the jury on the elements of aiding and abetting, which included requiring the prosecution to prove each element beyond a reasonable doubt. *Id.* at PageID.1091–92.

Jones-Hill asserts that the introductory remark instructed the jury to find that the passenger of the Fusion perpetrated the shooting while another individual drove. Defense counsel objected; there was testimony from one witness that he could not tell whether the driver or passenger was the shooter (thereby suggesting the possibility of a merely present passenger). *Id.* at PageID.1101–02. The trial court overruled the objection, stating in error, "I think I said that was the People's theory; didn't I put it that way?" *Id.*

Viewed in isolation, the court stated that the evidence "had" one occupant of the Fusion driving and the other occupant shooting. However, noting that the evidence "had" something differs from directing the jury to decide that the evidence established something beyond a

18

reasonable doubt. In addition to the challenged statement, the jury was repeatedly instructed on the prosecution's burden of proof. *Id.* at PageID.1076–77, 1080, 1086, 1090–93.

Furthermore, before the challenged statement, the jury was instructed, "As jurors, you must decide what the facts of the case are[;] [y]ou must decide what happened and this is your job and no one else's[.] What you decide about any fact in this case is final[.]" *Id.* at PageID.1075. The jury was also instructed to only consider the evidence and that the court's "comments, rulings, questions, and instructions are also not evidence[.] [W]hen I make a comment or give an instruction, I am not trying to influence your vote or express a personal opinion about the case. If you believe that I have an opinion about how you should decide the case, pay no attention to that opinion. You are the only judges of the facts, and you must decide this case only from the evidence." *Id.* at PageID.1078. Similar admonitions were made before trial. ECF No. 7-10, PageID.541.

Reading all of the instructions together, as established Supreme Court law mandates, there is no reasonable likelihood that the jury believed it was directed to make a factual finding that one person drove the Fusion while the other person engaged in the shooting. Instead, as the trial court believed it had made explicit, the jury would have understood that it was being instructed on aiding and abetting because the evidence presented at trial made the instruction relevant.

19

This was not the only place in the instructions where the trial court prefaced a legal concept, the court also instructed the jury on transferred intent. Before doing so, the court explained that the instruction was relevant "because nobody is claiming that the Defendants had a motive to shoot up the car that contained the four complainants in this case. The motive here, if any, would be that either one or both of the Defendants had a motive to commit the crime against the originally intended target. That is, O." *Id.* at PageID.1083.

Given the court's repeated and clear statements that the facts were something for the jury alone to determine, as well as to disregard any statement it thought indicated an opinion of the court on the matter, there is no reasonable probability that the jury understood the challenged comment to direct it to make a particular factual finding. *See United States v. Jennings*, 40 F. App'x. 1, 5 (6th Cir. Feb. 26, 2002). If there was any error in the trial court's prefatory statement—given the clear and overwhelming evidence regarding the circumstances of the shooting—it did not have a substantial impact on the trial's result. *Hedgpeth*, 555 U.S. at 61–62. Accordingly, the Michigan Court of Appeals reasonably rejected this claim.

Jones-Hill has, again, failed to demonstrate entitlement to habeas relief.

20

**C. Autopsy Photograph**

Jones-Hill next asserts that his trial was rendered fundamentally unfair in violation of due process by the admission of an autopsy photo. Jones-Hill attached a copy of the color photo to the petition. It is a closeup shot of the back of the deceased's partially shaven head, depicting a relatively large and irregularly shaped open wound with more minor irregular wounds around it. The wounds and skin appear clean, and no excess blood or gore is visible. ECF No. 1-5, PageID.71.

The U.S. Supreme Court has never ruled that the admission of crime scene or autopsy photographs violates due process. Rather, it has stated that just because a photograph "is shocking to the sensibilities of those in the courtroom" does not alone "render its reception a violation of due process." *Lisenba v. California*, 314 U.S. 219, 228 (1941).

As a result, the Sixth Circuit has held that a challenge to the admission of a gruesome photo does not present a question of constitutional magnitude under clearly established Supreme Court law. *See Cooey v. Coyle*, 289 F.3d 882, 893–94 (6th Cir. 2002) (citing *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997)); *see also Franklin v. Bradshaw*, 695 F.3d 439, 456–57 (6th Cir. 2012) (admission of eighteen autopsy photographs of victims did not render state criminal trial fundamentally unfair); *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (affirming district court's denial of habeas relief on claim challenging the admission of victim photographs); *Skrzycki v. Lafler*, 347 F. Supp. 2d 448,

455 (E.D. Mich. 2004) ("The admission of relevant photographs of a crime scene or a victim, even if gruesome, does not deprive a criminal defendant of a fair trial.").

The Michigan Court of Appeals found that the photo admitted here was relevant and admissible. The provided purpose of the exhibit was to show that the bullet was fired by a high-velocity weapon and must have passed through glass or some other medium and brought that material with it to create the constellation of wounds. ECF No. 7-11, PageID.734–35. A critical factual issue at trial was the identity of the shooter. The fact that a high-velocity weapon caused the wound was relevant because of evidence that Jones-Hill had an assault rifle shortly before the shooting and because corresponding ammunition was found at Reave's mother's house.

Additionally, the evidence indicated that there were four people inside the deceased victim's vehicle. Evidence that the bullet that killed the deceased victim came from outside the vehicle and brought glass or debris with it was relevant to exclude any hypothesis that someone inside the car fired the fatal shot.

Finally, at issue here is a single, color photo of the fatal wound. Despite Jones-Hill's characterization of the exhibit as "gruesome and repulsive," ECF No. 1, PageID.30, the image does not appear to the Court to be overly bloody or gory but instead seems more clinical. The admission of far more gruesome photos has been upheld on federal habeas review.

*See Biros*, 422 F.3d at 391 (state court decision affirming the admission of "three photographs - depicting [the victim's] severed head, her severed head held near her torso and severed breast, and her torso with the severed head and severed breast replaced on torso," was not unreasonable application of Supreme Court precedent).

Given these circumstances, the state appellate court reasonably rejected the claim. Accordingly, habeas relief is not warranted on this claim either.

### D. Admission of Laboratory Report

Jones-Hill's last claim asserts that his rights under the Sixth Amendment's Confrontation Clause were violated when the ballistics lab report was admitted in place of live testimony and subject to cross-examination. On direct appeal, the Michigan Court of Appeals found that Jones-Hill waived his right to confront and cross-examine the report's author when he failed to demand live testimony after the prosecutor filed a notice that it would present the report under Michigan Court Rule 6.202. *Jones-Hill*, 2021 WL 4239024, at *5.

The Confrontation Clause generally prohibits the admission of testimonial out-of-court statements at trial. *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). Testimonial statements include, among other things, pretrial statements that declarants would reasonably expect to be used in a prosecution—typically including forensic reports generated in connection with a criminal investigation. *Id.* at 51; *see Bullcoming v. New*

23

*Mexico*, 564 U.S. 647, 567–78 (2011) (defendant has the right to cross-examine the person who performed testing or examination of evidence obtained from defendant); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310–11 (2009) (expert report is "functionally identical" to testimonial statement when presented to prove truth of its content).

Nevertheless, clearly established Supreme Court law allows a State to impose a timely Confrontation Clause objection on the defendant. The Supreme Court has approved so-called "notice-and-demand procedures," like the one found in Rule 6.202. According to the Supreme Court, these rules "typically 'render…otherwise hearsay forensic reports admissible[,] while specifically preserving a defendant's right to demand that the prosecution call the author/analyst of [the] report.'" *Bullcoming*, 564 U.S. at 666 (quoting *Melendez-Diaz*, 557 U.S. at 326–27). Notice-and-demand procedures are sufficient under established law to protect a defendant's rights where they "permit the defendant to assert (or forfeit by silence) his Confrontation Clause right after receiving notice of the prosecution's intent to use a forensic analyst's report." *Melendez-Diaz*, 557 U.S. at 326.

Rule 6.202 is such a rule. Rule 6.202(B) and (C)(1) provide that, within 14 days of receipt, the prosecutor must state its intention to present the forensic report at trial and serve a copy of the report to defense counsel. Under Rule 6.202(C)(2), the defense has 14 days to file a written objection. If an objection is filed, the report is not admissible. *Id.* If no objection is filed, the report is admissible. *Id.*

The prosecution notified Jones-Hill of its intent to offer the ballistics report in lieu of live testimony from Grabowski under Rule 6.202, and Jones-Hill did not file an objection. The trial court held a hearing before the report's admission, and it inquired from both defense attorneys whether the prosecutor had complied with the requirements of Rule 6.202. Jones-Hill's counsel did not make a coherent objection, replying only "yes, no, yes, no." ECF No. 7-11, PageID.783. A second offer to record any objection was declined. *Id.* at PageID.788.

The Court will not question the Michigan Court of Appeals' determination that defense counsel's responses were inadequate to constitute an objection. The state court of appeals reasonably found that Jones-Hill waived his Confrontation Clause rights by failing to make a timely objection under Rule 6.202(C)(2) and then failing to make a coherent objection when asked if the prosecution complied with the rule.

Nevertheless, Jones-Hill asserts his claim was preserved when defense counsel initially objected to the report's admission because Grabowski was not listed on the prosecutor's witness list. ECF No. 7-11, PageID.778. Yet that objection came too late to constitute a "demand" for live testimony under Rule 6.202(C)(2), and it was made on different grounds. Jones-Hill offers no state authority standing for the proposition that notice under Rule 6.202(B) and (C) must be accompanied by listing the report's author on the witness list. Indeed, the whole point of offering

25

notice under Rule 6.202 is to inform the defendant that the report's author will *not* be testifying.

Accordingly, the Michigan Court of Appeals, consistent with the dictates of clearly established Supreme Court law, reasonably found that Jones-Hill waived his Confrontation Clause claim.

## IV. CONCLUSION

None of Jones-Hill's claims merit habeas relief. Consequently, his petition is **DENIED**.

Before Jones-Hill may appeal this decision, the Court must determine whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

To satisfy § 2253(c)(2), Jones-Hill must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of any of Jones-Hill's claims. The Court will, therefore, deny a certificate of appealability.

For the reasons above, the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**, and a certificate of appealability is likewise **DENIED**.

**IT IS SO ORDERED**.

Dated: May 14, 2024

s/Terrence G. Berg

TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE